## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **RICHARD P. LEWIS** | * | **CIVIL ACTION NO. 09-2109** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Richard P. Lewis, born August 3, 1951, filed applications for a period of disability and disability insurance benefits and supplemental security income on February 1, 2007, alleging disability as of January 20, 2007, due to back, heart, and knee problems.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:[1]

**(1) Records from VA Hospital Alexandria dated February 14, 2003 to March 29, 2007**.  During this period, claimant was treated for unspecified alcohol dependence, unspecified drinking behavior; cocaine dependence, anxiety state, depressive disorder, angina pectoris, prolonged post-traumatic stress disorder, benign essential hypertension, joint pain in the shoulder region, and combinations of drug dependence.  (Tr. 137-52).

**(2) Consultative Examination by Dr. Kenneth A. Ritter, Jr. Dated April 10, 2007**.  Claimant complained of low back pain, bone spurs in his feet, hypertension, irregular heart beat, depression, and chronic anxiety.  (Tr. 153).  He brought his medications, including Bupropion, HCTZ, Diclofenac, Cyclobenzaprin, Xanax, and Ibuprofen, but they were all significantly outdated. He also complained of occasional headaches, mid-chest pains at least five times a week with walking too far, occasional dyspnea, frequent nausea, and occasional abdominal cramping.  (Tr. 153-54).

---

[1]Although all of the medical records were reviewed by the undersigned, only those relating to the arguments in claimant's brief are summarized herein.

On examination, claimant's blood pressure was 148/92.  (Tr. 154).  He smoked one-half pack of cigarettes a day, and drank alcohol occasionally.  He was 5 feet 7 inches tall, and weighed 129 pounds.

Claimant had a normal gait and station.  (Tr. 155).  DP pulses were 2+ and equal.  He had negative straight-leg raises bilaterally.  He had soft large calluses on the bottoms of his feet.  He had a full range of motion of all extremities without redness, heat, tenderness, or joint swelling.  Neurologically, he was intact with normal DTRs, strength, and sensation.

Dr. Ritter stated that he had reviewed all medical records sent to him, including a cardiac work up in December, 2006 showing very normal back function.  He noted that there was no mention of any type of back problems during that work up or in a previous extensive medical office visit in October, 2006.

Dr. Ritter's impression was complaints of low back pain, complaints of pain in the bottoms of claimant's feet when he walked too much, hypertension by history with an elevated blood pressure on examination, a history of anxiety and depression, and ongoing heavy cigarette smoking.

In the Medical Assessment of Ability to do Work-Related Activities (Physical), Dr. Ritter found that claimant had no exertional limitations.  (Tr. 156).

He could perform all postural activities frequently.  He had no functional or environmental limitations.  (Tr. 157).

**(3) Consultative Examination Report from David Greenway, Ph.D., dated April 19, 2007**.  Claimant was currently homeless and lived with his girlfriend, who was returning to her mother's home.  (Tr. 159).  He said that his girlfriend and her children helped with finances.  He did not have a driver's license due to unpaid insurance.  He managed money, shopped, cooked simple meals, visited with friends on weekends, and spent much of his time visiting with his deceased wife's family.

On examination, claimant was casually dressed and groomed.  He reported that he had become depressed because he could not longer do many of the things he once did.  His vocabulary and range of expressive symbols were fair.  His receptive skills were fair.

Claimant's affective expression was mostly composed with limited variability.  (Tr. 160).  His insight and judgment appeared fair.  His social skills were adequate.

During interviewing, claimant was alert and oriented.  His level of consciousness was stable.  His attention and concentration were within the lower bounds of normal limits.  Recent and remote memories were fair.  Pace was slow

with fair effort and persistence.  Overall, intelligence was estimated in the average range.

Dr. Greenway's diagnoses was depression, NOS, mild and alcohol abuse, chronic, moderate.  Claimant's Global Assessment of Functioning score was 60 over the previous year.  He presented with mild subjective sadness related to changing health status and life circumstance.  Dr. Greenway observed that claimant had a long history of excessive drinking with substance abuse treatment.

Dr. Greenway opined that claimant should be able to maintain employment consistent with his history.  He found that claimant's cognitive skills were adequate to understand, remember, and carry out fairly detailed instructions, and to maintain attention to perform simple repetitive tasks for two-hour blocks of time.  He also determined that claimant should be able to tolerate moderate stress associated with day-to-day work activity and demands, and sustain a moderate effort and persist at a slow to moderate pace over the course of a routine 40-hour workweek.  Claimant's social skills were adequate to relate to others, including supervisors and co-workers, in employment settings.  He would be considered capable to manage his own personal financial affairs.

**(4) Psychiatric Review Technique dated April 20, 2007**.  Linda Upton, Ph.D., assessed claimant for depression, NOS mild, finding that his impairment

5

was not severe.  (Tr. 162, 165).  She found that claimant had no restriction as to activities of daily living and maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace.  (Tr. 172).  He had no episodes of decompensation.

**(5) Physical Residual Functional Capacity Assessment dated May 10, 2007**.  The medical consultant found that claimant had no limitations.  (Tr. 176-81).

**(6) Records from VA Medical Center, Alexandria, dated June 18, 2007 to March 26, 2009**.  On June 18, 2007, claimant complained of low back and foot pain.  (Tr. 407-09).  He was still drinking a six-pack of beer and smoking one pack of cigarettes per day.  (Tr. 409).  Lumboscasral spine x-rays showed degenerative disc disease and degenerative facet disease.  (Tr. 260).  Right foot x-rays were normal.  (Tr. 259).

The assessment was DJD low back pain, hypertension, anxiety state/depressive disorder, and cocaine/alcohol dependence.  (Tr. 408).  Claimant was advised to stop substance abuse.

On November 20, 2007, claimant complained of chest pain.  (Tr. 238).  He was smoking one-half pack of cigarettes per day.  He was not taking his medications as ordered, except for his high blood pressure medicines.  (Tr. 329,

406).  His cardiovascular exam showed regular rate and rhythm with no murmurs. (Tr. 239).  The assessment was non-radiating chest pain and hypercholesterol.  (Tr. 240, 405).

On December 10, 2007, claimant sought services for chemical dependency. (Tr. 228).  He admitted to abusing alcohol, two and a half pints of whiskey, and crack cocaine.  (Tr. 228, 279).  His assessment was polysubstance dependence, hypertension, mild depression, and chronic back, leg, and shoulder pain.  (Tr. 229).  His GAF score was 50.  He began the chemical dependency outpatient program.  (Tr. 234).

Claimant was admitted again on December 14, 2007, for atypical, non-cardiac chest pain.  (Tr. 220).  He admitted to using cocaine.  (Tr. 384).  Chest x-rays showed moderate over-aeration, but were otherwise normal.  (Tr. 191-92).

A nuclear stress test performed on February 28, 2008, showed a left ventricular chamber that was mildly enlarged, mild ischemia in the proximal third septum, no significant scarring, and LVEG of 53% with septal skinesis.  (Tr. 431). The primary diagnosis was abnormality.

ECGs performed February 15, 2008, and June 23, 2008, showed sinus bradycardia.  (Tr. 275, 417-18).  The assessment was borderline ECG.  (Tr. 417).

Lumbar spine x-rays dated June 4, 2008, showed mild dextroscoliosis and mild multilevel degenerative changes, grossly unchanged since the prior examination.  (Tr. 254).  An MRI of the lumbar spine dated June 26, 2008, showed mild degenerative changes in the lumbar spine.  (Tr. 437).

On March 26, 2009, claimant was seen for depression, bereavement, and alcohol misuse.  (Tr. 453, 460).  He continued to smoke.  (Tr. 455).  He also complained of pain in his back and feet.  (Tr. 455).

X-rays of the lumbar spine dated March 27, 2009, showed degenerative spondylosis.  (Tr. 443).  Right foot x-rays showed degenerative changes.  (Tr. 444-45).

(7) Claimant's Administrative Hearing Testimony.  At the hearing on November 20, 2008, claimant was 57 years old.  (Tr. 22).  He testified that he was 5 feet 5 inches tall, and weighed 129 pounds.  He lived with his wife and 10-year-old grandson.  (Tr. 22-23).

Claimant testified that he did not drive, because his license had not been renewed.  (Tr. 23).  He had completed high school.  He had vocational training in air conditioning and refrigeration, but did not complete it.  (Tr. 24).

Claimant had served in the Air Force from 1970-71.  His rank was airman basic.  While in the military, he was a supply clerk.

8

As for work experience, claimant had done construction, bricklaying work, and raising sugar cane.  He had also worked offshore.  His last job was as a welder's helper.

Regarding complaints, claimant testified that he had stopped working because of pain in his back and foot, for which he took Ibuprofen.  (Tr. 25, 27).  He also complained of depression, chest pains, and shortness of breath.  (Tr. 28, 30).

Claimant stated that he had last consumed alcohol in 2007.  (Tr. 25).  He testified that he had never used cocaine.  While drinking, he consumed about a six pack or two glasses of whiskey at one time.  (Tr. 26).  He smoked about half a pack a day.

As to activities, claimant testified that he mostly sat on his porch and watched TV.  (Tr. 27).  He also helped his grandson with homework.  He was trying to put a puzzle together.  (Tr. 29).  He attended AA meetings once a month.  (Tr. 31).

Regarding limitations, claimant testified that he could lift only about a pound because of pain.  (Tr. 29).  He stated that he could walk at least half a block before he had to stop.  (Tr. 33).  He could sit for about 20 to 30 minutes.  (Tr. 34).  He rarely twisted, and could not stoop, bend, crouch or squat.  (Tr. 35).

9

Additionally, claimant had problems with cold weather because of pain.  He said that pain interfered with his ability to pay attention and concentrate.  He had problems sleeping.  (Tr. 36).  He was able to get dressed and take a bath.  (Tr. 36-37).

   **(8) The ALJ's Findings are Entitled to Deference**.  Claimant argues that the ALJ erred: (1) in failing to find that he had a severe impairment, and (2) in failing to apply the Medical and Vocational Guidelines to his impairments.

As to the first argument, claimant argues that the ALJ erred in failing to find that he had a severe impairment within the meaning of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).  [rec. doc. 15, pp. 3-5].  The *Stone* standard is as follows: "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  (emphasis added).  However, the record reflects that the ALJ properly applied this standard.  (Tr. 13-14).

Specifically, claimant argues that if the mental issues related to substance abuse[2] are excluded, then there is clear evidence that he had complaints of

_____

[2] The Social Security regulations provide that alcohol and/or drug addiction that materially contributes to disability cannot be the basis for an award.  *See Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001).  "Material" means that a person would not be found disabled (based on

difficulty sitting and standing as indicated in his Disability Report.  [rec. doc. 15, p. 4].  While the record does refer to plaintiff's pain complaints, there are no records showing that it interfered with his ability to work.  It is well established that claimant's statements alone are not enough to establish that there is a physical or mental impairment.  20 C.F.R. §§ 404.1528(a), 416.928(a).

Here, the objective evidence shows no disabling impairment.  As noted by the ALJ, claimant's right foot x-rays showed no abnormality. (Tr. 15, 259).  Lumbar spine x-rays revealed only mild dextroscoliosis and mild multilevel degenerative changes.  (Tr. 254).  Likewise, an MRI of the lumbar spine dated June 26, 2008, showed mild degenerative changes.  (Tr. 437).

Additionally, the ALJ's finding of a non-severe impairment is supported by the Residual Functional Capacity Assessment, which shows that claimant had no exertional limitations.  (Tr. 176-83).  The ALJ's determination is further buttressed by the opinion of Dr. Ritter, who found that claimant had no exertional limitations, could perform all postural activities frequently, and had no functional or environmental limitations.  (Tr. 156-57).

─────────────────

his other impairments) if he stopped using drugs and/or alcohol.  20 C.F.R. §§ 404.1535 and 416.935; Hearings, Appeals and Litigation Law Manual (HALLEX) Section I-5-314 (Nov. 14, 1997).

Claimant argues that Dr. Ritter does not identify the records upon which he had relied for his opinion.  However, Dr. Ritter specifically stated that he had reviewed claimant's cardiac work up dated December of 2006 showing very normal heart function, as well as the "previous extensive medical office visit" in October of 2006.  (Tr. 155).  Based on his own examination as well as the medical evidence, provided Dr. Ritter opined that claimant had no physical limitations which would impede his ability to work.  Thus, this argument lacks merit.

Additionally, claimant notes that the last x-rays show degenerative spondylosis and degenerative changes.  (Tr. 443-45).  While claimant acknowledges the report's indication that this was a minor abnormality, he asserts that it would still interfere with his work activities.  [rec. doc. 15, p. 5].  However, objective medical evidence from the state agency medical consultant, Dr. Ritter and the VAMC shows that this minor abnormality would *not* affect his ability to work.  (emphasis added).   Thus, this argument lacks merit.

Further, the evidence shows that claimant was non-compliant with his medications.  (Tr. 153, 329).  He also failed to adhere to his physicians' instructions to stop drinking and abusing substances.  (Tr. 228, 241, 384, 408, 409, 453).  It is well established that failure to follow prescribed medical treatment precludes an award of benefits.  20 C.F.R. § 404.1530(a), (b); *Johnson v. Sullivan*,

894 F.2d 683, 685, n. 4 (5th Cir. 1990).  Thus, the ALJ's finding of non-disability is entitled to deference.

Next, claimant argues that he should have been found disabled based on the Medical and Vocational Guidelines.  [rec. doc. 15, p. 6].  He refers to the argument in his attorney's brief indicating that his RFC should have been lowered to light or sedentary work.  (Tr. 117-119).  However, as previously indicated, the medical records show that claimant had no exertional limitations.

Additionally, Dr. Greenway determined that claimant had no mental limitations which would prevent him from working.  (Tr. 160).  He found that claimant should be able to maintain employment consistent with his history, finding that claimant's cognitive skills were adequate to understand, remember, and carry out fairly detailed instructions, and to maintain attention to perform simple repetitive tasks for two-hour blocks of time.  He also determined that claimant should be able to tolerate moderate stress associated with day-to-day work activity and demands, should be able to sustain a moderate effort and persist at a slow to moderate pace over the course of a routine 40-hour workweek, and had adequate social skills to relate to others, including supervisors and co-workers, in employment settings.

While claimant argues that the ALJ should have proceeded to the next step in the sequential evaluation process, the ALJ found that there was no need, given his finding of no disability.  (Tr. 17-18).  A finding that the claimant is not disabled at any step is conclusive and ends the inquiry.  *Masterson* v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002).  As the ALJ found no disability, and the medical records support that determination, there was no need for the ALJ to have proceeded to the Medical/Vocational Guidelines.  Thus, this argument lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND**

14

**RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed January 27, 2011, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

16